IGNATIUS SMITH et al. *vs.* THOS. G. HAYES, Pres-
IDENT OF THE BOARD OF AWARDS ET AL.

*Municipal Corporations—Bill to Enjoin Execution of Contract for
Street Lighting Because Award was Unfairly Made—Failure to
Prove Allegations of Bill.*

Plaintiff's bill alleged that the Superintendent of Lamps and Lighting
of Baltimore City advertised for proposals for lighting the streets
of the city in pursuance of the charter provisions, the lamps being
required to develop a designated candle-power; that four bids were
received from different parties and tests made of the burners sub-
mitted; that the lowest bid was rejected on the ground that the lamps
offered under it were not satisfactory and the contract was awarded to
another bidder; that the tests were unfairly and fraudulently made and
that the Superintendent acted collusively in the interest of the party to
whom the contract was awarded. The bill asked for an injunction
restraining the municipal officers from carrying out the contract.
*Held*, that the evidence fails to prove the truth of these allegations or
to show that there was fraud or unfairness on the part of the city
officials in making the tests.

Appeal from Circuit Court No. 2, of Baltimore City
(HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, PAGE, PEARCE and SCHMUCKER, JJ.

*John V. L. Findlay* (with whom was *Thos. Mackenzie* on
the brief), for the appellants.

*Albert C. Ritchie* (with whom was *W. Cabell Bruce* on the
brief), for the Board of Awards *et al.*

*Thos. R. Clendinen*, for the American Lighting Co.

FOWLER, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by Ignatius
Smith and George L. Ford, two taxpayers of Baltimore City,
for themselves and all other taxpayers residing therein.

It alleges that the Mayor and City Council, one of the defendants, is authorized by its charter to contract for public work or supplies exceeding in value the sum of five hundred dollars, after advertising for proposals for the same as prescribed in said charter ; that the defendant, Robert J. McCuen, is the Superintendent of Lamps and Lighting of said city and in pursuancce of authority vested in him by said charter, advertised in accordance with the provisions of the 14th section thereof, for proposals for lighting the streets of said city and prepared specifications of the work required ; that in answer to this advertisement, which stated that copies of the specifications could be obtained at the office of the Superintendent of Lamps, &c., four bids were received on the 22nd of October, the day fixed for receiving them.　These bids were, in accordance with the advertisement, for one, two, three, four and five years.　The first bid was that of the Public Contracting Co., H. E. Vanden, Prest., 1, 2, 3, or 5, years, $24.71 per lamp per year ; American Lighting Co., R. S. Carswell, 1 year, $28.40; 2 years, $28.00; 3 or 5 years, $27.25; Welsbach Street Lighting Co. of America, 1 year, $29.50; 2 years, $29.50; 3 years, $29.00; 5 years, $28.50, and lastly the Union Lighting Co., L. S. Nicolai, President, 1 year, $26.80; 2 years, $26.60; 3 years, $26.60, and 5 years, $26.35.　The bill further alleges that on the opening of these bids, it appearing that the Public Contracting Company was the lowest bidder, Mr. McCuen, as required, ordered a test to ascertain whether the burner submitted by that company would develop the requisite candle power as prescribed by the specifications, to wit, 60 candle power, and on a false claim that the result of the test was adverse to the Public Contracting Co. and against its protest, that such a conclusion had been unfairly reached, a new advertisement was ordered for bids, and the said company dropped out, charging it had not received fair treatment; that as the result of the second advertisemet the following bids were received; viz, the Welsbach Lighting Co. which repeated its former bid, the figures not being changed in any particular; the American

Lighting Co. (which made a considerable reduction from its former bid) that is for 1, 2 or 3 years, $23.45 per lamp per year; John P. Rumpf for 1, 2, 3 or 5 years, $21.50 per lamp per year; the Union Lighting Company also made a reduction from its former bid, 1 year, $24.40; 2 years, $24.95; 3 years, $25.85, and 5 years, $26.35. The result of this bidding was that John P. Rumpf was the lowest bidder, his bid being $21.50 for 1, 2, 3, 4 or 5 years. It is further alleged that upon the receipt of these bids Mr. McCuen ordered another test ; that the burner offered by Rumpf was tested without the aid of a chimney and showed a candle power below sixty and was, therefore, rejected, and the contract was awarded to the American Lighting Co. as the next lowest bidder for three years from 1st of January, 1903. The plaintiffs charge that the test by which the contract was awarded to the American Lighting Co. as the lowest bidder and not to Rumpf was falsely and fraudulently made and that said defendant McCuen did not actually himself make the test as he was required to do, because he was in collusion with Rumpf and acting in the interest of the successful bidder, the American Lighting Co. And finally it is alleged that it was agreed by McCuen and all the bidders that photometric tests of each burner were to be made on the basis of ten readings of each burner so tested and that all the burners were to be tested without chimneys and that, notwithstanding this agreement, and after the burners of the American Lighting Co. tested without chimneys had failed to yield the requisite 60 candle power, while the burners of other bidders, measured fully up to the requirements. Mr. McCuen ordered other tests to be made in the interest of the American Lighting Co. with chimneys, so as to give it an advantage it was not entitled to, and without the aid of which the burner submitted by it had failed to reach the required candle power, but with which it was enabled to do it. It is also alleged that chimneys in connection with such lamps as were being tested are practically useless ; though of considerable advantage to the burner in undergoing the test. That all the proceedings connected with the letting

of this contract to the American Lighting Co. were unfair and fraudulent and void of that good faith and fair dealing without which competitive bidding is impossible.   A prohibitory injunction is prayed restraining the Mayor and City Council of Baltimore, the Board of Awards and R. J. McCuen, Superintendent of Lighting, &c., and the said American and Lighting Co. from consummating said contract.

The bill was answered by all the defendants and all of them deny the alleged fraud and unfair dealing in making the said tests except the Mayor and City Council of Baltimore and the Board of Awards who deny there was any favoritism shown in awarding the contract and declare they had no knowledge of any collusion or fraud on the part of said Rumpf and the American Lighting Co. and that if they had had such knowledge or information (and they do not believe such collusion existed), they would not have awarded the contract to said American Lighting Co.

A large. amount of testimony was taken by the plaintiffs and at the conclusion of their case and without any evidence being offered by any of the defendants, the learned Judge of Circuit Court No. 2, of Baltimore City, decreed that the plaintiffs were not entitled to any of the relief prayed and dismissed their bill.   Hence this appeal.

The sole question presented is one of fact, it being conceded that by the settled law of this State the decision of the Board of Awards will not be reviewed by this Court unless fraud is shown on the part of that board or some of its members or on the part of some of the city officials connected with the tests or other proceedings relative to the awarding of the contract.

The appellants rely upon two principal grounds to sustain their contention that the award of the contract to the American Lighting Co. should be enjoined.

The first relates to the alleged unfairness on the part of McCuen at the October test which was made after the first advertisement and which unfairness is alleged to have resulted in the failure of the Public Contracting Co. to get the contract; the second is based upon the charge that Mr. Rumpf design-

edly and fraudulenty manipulated the burner submitted by him on the 5th November, for the purpose of making it show less than 60 candle power in order that the contract might be awarded to the American Lighting Co. the next lowest bidder to him; and that Rumpf and the American Lighting Co. and McCuen were all in collusion for the purpose of carrying out this fraudulent design.   *First*, briefly, in regard to the October test.

This test, it will be remembered, resulted in nothing because all the lamps submitted by all the bidders failed to come up to the 60 candle power required by the specifications.   While it is alleged by the plaintiffs that McCuen made a false claim that the result of the October test was adverse to the Public Contracting Company we do not think it is sustained by the testimony.   In the first place it was suggested that Mr. Wilson, the assistant of Mr. McCuen, broke the mantle on this company's lamp, but it is not intimated that this action was intentional or designed to injure its lighting capacity.   On the contrary Mr. Vanden, the president of the company himself says that Mr. Wilson unconsciously injured the mantle, because of its very delicate and flimsy material.   After the first mantle was destroyed or injured so that it could not be used, another was substituted by one of the employees of the company and the test proceeded.   This second mantle did not prove satisfactory, because the lamp showed only 56 or 57 candle power.   Mr. McCuen or the employee who was managing the test of the lamp on the part of the company suggested that another trial be made with a new or different mantle.   This was done and the result showed a candle power of 64 and a fraction.   It appears that the trial made with the first mantle was not counted, but those made by the second and third mantles were used to ascertain the average.   Mr. Vanden objected to this plan of averaging, but he admits the candle power of all other lamps was ascertained in the same manner.   The specifications also expressly provide that Mr. McCuen as Superintendent of Lights reserves the right to place under a test in *such manner as he may determine* all

burners, lamps and fixtures which shall be submitted by bidders. And when we examine the testimony of the witness, Prof. Monroe, the propriety and necessity of averaging the tests becomes very apparent. He says, "Where you have two or more tests the same lamp would give a different degree of candle power in each test, and it would be only by coincidence that the readings would be identical every time." In all this we find nothing to sustain the charge we have been considering. But in the next place is it proven satisfactory or, indeed, at all that the Rumpf burner was not made to do its best at the several tests, and that even this be so, is there any evidence which connects the Board of Awards, the Superintendent of Lamps or any other city official with this alleged fraudulent conduct? We will first consider the latter part of this question, for if that be answered in the negative it would be unnecessary for the decision of this case to go any further, it being incumbent on the plaintiffs to show fraud on the part of the Board of Awards and the city officials before this Court can be asked to interfere and grant the relief prayed in the bill.

In this connection the testimony of Prof. Monroe is of the greatest importance when it is remembered who he is and the opportunities he had for observation. He was a graduate of Harvard, professor of chemistry at the U. S. Naval Academy and at the Naval War College in Rhode Island and at Columbian University, Washington. He is an expert photometrician and has had a long and wide experience. When asked to explain what he meant by saying that the tests were all made impartially and fairly he said: "I meant by it that *in every regard* the tests were carried out in a public, open and impartial manner. The fact that such tests were made and that all bidders were to have the opportunity to submit their burners for testing was publicly made; all the bidders and their representatives were permitted, at their will, to be present in the photometrical room. They were invited by Mr. Wilson (Mr. McCuen's assistant) to read from the bar if they chose. I, as the representative of one of the bidders (The Union Lighting

Co.) was given the opportunity to read throughout the test and on the conclusion of the tests, notably of the first set of tests. Immediately on the conclusion all the results were averaged and given out publicly to everybody. I thought— and I think—that the testing was impartial and much to be commended." All the witnesses agree, we think, that the bidders "put the lamp on the bar and adjusted it for its burning capacity." When this was done the bidder or his representative stated when he was ready to have it tried. Prior to this, however, Mr. Wilson representing Mr. McCuen, saw that the lamp occupied the proper position at the end of the bar, so as to be at the proper distance from the centre of the initial point of the bar and at the proper position on the field so that a proper test of it might be made." This is the testimony of Prof. Monroe and Mr. Clark of the Welsbach Street Lighting Co., another bidder, testifies to the same effect. Everybody was allowed to adjust and fix his own lamp."
"Prof. Monroe says that at the test which took place with that first Rumpf burner he is unable to say whether or not he and others also there were given an opportunity to adjust that burner, but that he did know the lamp behaved very peculiarly." Some hours were spent in attempting to make it work. It was the lamp to which the chimney was applied which gave the whistling noise, and I know there was a large amount of advice given to Mr. Rumpf. Everybody in the room gave him more or less advice." This same witness also testified that at the test on November 6th the Rumpf lamp was not doing what it should and that the representative (Mr. Nicolai) of one of the bidders so stated at the time, and that after the test of November 12th the Rumpf burner was taken into the possession of Mr. McCuen who said he intended to make a further test of the burner himself in view of the charges that the Rumpf burners had not been made to do the work they were capable of doing. At the end of the last test Prof. Monroe himself expressed that opinion, and no doubt it was an honest one. It was because of the expression of this opinion that Mr. McCuen invited him and Mr. Wilson to ex-

amine the burner again and such examination, though not a complete one, was had. Prof. Monroe also based an opinion to the same effect upon certain experiments made in Washington under conditions different from the conditions under which the official tests were made, and he said himself that this difference was sufficient to account for the different results obtained. And while this witness said he had an expectation that Mr. McCuen would make another test he at the same time admitted that if he had done so the other bidders would very likely have said he was interested in having that burner, that is the Rumpf, accepted. But certainly neither the Board of Awards nor Mr. McCuen unless they are connected with it are to be held liable for Rumpf's fraudulent manipulation of his burner. Nor should the fact that the latter accepted the results shown by the burner as adjusted and submitted by Rumpf of itself be taken as proof of guilt. The evidence is that this burner failed every time it was tested in spite of the fact as testified to by Prof. Munroe that hours were spent in the effort to make it do better and although everybody in the room was advising Mr. Rumpf how to produce the best effect. It must also be remembered that although Prof. Monroe was present at every test he says he never saw on any of these occasions any conduct on Mr. McCuen's part that would lead to the belief that he was guilty of any fraud or collusion in reference to the taking of those tests.

· Whether or not Mr. McCuen ever made the further and private test which Prof. Monroe understood or expected would be made the record does not disclose. He was not called as a witness by the appellants. It will be remembered, however, that he submitted the burner to Prof. Monroe, who, although he had an ample opportunity to make an examination, he did not do so. As we have already said, it might well have been contended that another examination of the burner and an effort to bring the lamp up to the required candle power himself after the repeated failures in so many public tests would have justly subjected him to criticism and suspicion of unfair dealing in favor of the Rumpf lamp. A

good deal has been said in the testimony, and much also in the arguments, in regard to the fact that Mr. McCuen required the lamps to be tested with as well as without chimneys. He undoubtedly had the power under the specifications to do this, and Prof. Monroe himself states that in his opinion a test with chimneys was perfectly proper, although it appears that the owner of the Rumpf lamp protested against the use of chimneys in the test of November 6th.

But without a further discussion of the testimony we are of opinion that the plaintiffs have failed to establish the allegations of fraud contained in their bill as against the Board of Awards and the Superintendent of Lamps of Baltimore City. And although we do not deem it necessary to discuss the question as to how far the evidence shows any participation on the part of the American Lighting Co. in the alleged fraud, yet we are of opinion that such participation is not established.

From what we have said it follows that the decree appealed from must be affirmed.

*Decree affirmed with costs.*